Arguments not to exceed 15 minutes per side. Mr. Menefee for the appellant. Good morning. I'm Michael Menefee. I represent Kelvin Mize. I'd like to reserve three minutes for rebuttal please. Mr. Mize has raised four issues for review and really three issues. The third issue I raised was whether the court is encompassed by the other issues. That being said, if it pleases the court, I'd like to focus most of my time today on issue number one and that is whether the proof at trial constructively amended the indictment. And then I'll let my brief speak mostly to the other issues. Mr. Mize argues that at trial the government presented voluminous and irrelevant facts about a separate and distinct drug conspiracy effectively amending the indictment and placing the defendant on trial for crimes that weren't before the court, that weren't in the indictment. There were, the evidence at trial described two distinct conspiracies. One of them was referred to as the Bustle Conspiracy, named after a man named Kevin Trent Bustle. That conspiracy was a 20 defendant conspiracy, a 40 person conspiracy, the evidence was, that lasted between October 2008 to December 2010. And the conspiracy that was actually before the court, that allegedly my client was involved with, was a four person conspiracy consisting of members of his family that lasted from June 2009 to November 2011. So there's a year there that the Bustle Conspiracy was going on, or several months that the Bustle Conspiracy was going on before the Mize Conspiracy. Even looking at the government's brief in this case, I was reviewing it again last night, it is apparent that the government seeks to, and did seek at trial, to use the Bustle Conspiracy to prove the Mize Conspiracy, the conspiracy that was before the court. If you read the government's statement of facts, there are four pages into the Bustle Conspiracy before they even start explaining or describing the conspiracy that was before the court at trial. The government begins their brief describing the Bustle Conspiracy, and that's the way the majority of the trial went. The majority of the evidence at trial dealt with the Bustle Conspiracy. The reason for that was because the government had a lot more evidence on the Bustle Conspiracy and the players that were involved in that conspiracy. From the opening statement, the government described the Bustle Conspiracy in depth, the jurors heard all about and were promised, here's what you're going to hear from Mr. Bustle, here is how his conspiracy worked, here's how he ran things, and that's exactly what they heard. Special Agent Bethel Poston was the case agent, and he got up and described a very large organization, the Bustle Conspiracy, involving a very large number of pills. He described how it worked, how Mr. Bustle would go down to Florida and doctor shop, bring people back to Tennessee, and then he also described my client and his brother Jamie Mize, who was a defendant in this case, in that conspiracy, working for Mr. Bustle, for the time period that was encompassed even before the Mize conspiracy allegedly got started. Didn't Jackie Mize confederate with Mr. Bustle to learn the intricacies or the machinations of the Bustle Conspiracy and then apply it to his own alleged conspiracy? That is, that's what is alleged and there are facts that go to that, that they knew each other and that they lived not far apart and that type of thing. But there were times when Jackie accompanied Bustle on a trip or trips to Florida but didn't do the mule work that the other Mizes did. Is that true? I believe that the evidence is that Jackie may have gone to Florida with Mr. Bustle one time. And then there was evidence from Mr. Bustle, from the case agents, and from six of the defendants of the Bustle Conspiracy, including Mr. Bustle, that my client, Kelvin Mize, went with Mr. Bustle quite a bit in the beginning of all this. Mr. Bustle testified in this case for two days, for about a half of a day the first day and then a half a day the second day, so about a day total, about everything that I know about my client and his brother, working for him, doctor shopping for him, dealing drugs for him, and then that was followed up by all these other members, five other ones in addition to him, that all testified, I work for Mr. Bustle, I'm a doctor shopper for Mr. Bustle or otherwise work for him, and so does Kelvin, my client. Kelvin also works for him. Kelvin also does this. Now, there were, there was other evidence of the trial, there was evidence of the Mize Conspiracy, there was evidence that, so there wasn't an absence of evidence, or a complete absence of evidence on the Mize Conspiracy, but the fact is that the facts presented to the jury were, there was so much facts presented to the jury on the Bustle Conspiracy, my client's involvement in that conspiracy, my client's involvement in crimes that weren't before the court, that it created a variance, a constructive amendment to this indictment, we would argue. Every witness, I believe I mentioned, every witness save for, they had one witness, Agent Jones, who got on the stand and just simply introduced some documents, but every fact witness that came in, that testified about anything, described being involved in the Bustle Conspiracy, and they described their involvement with that, and then my client's involvement in the Bustle Conspiracy. Now, in the course of the testimony, did the lawyers or the court generally have the witness and the witness's testimony distinguish between what conspiracy he was acting in furtherance of or was testifying concerning when these witnesses rendered their testimony? Did that kind of, was that something that was done throughout the trial or no? To some extent, Your Honor, and admittedly, there should have been more objections at trial, more 404B type of objections at trial, based on all of the conduct that was coming in to evidence, you know, from crimes that weren't before the court. There should have been more of that, but there was objections at trial. The court ruled at trial or before trial that the testimony of these other witnesses were co-conspirator type of testimony. They allowed a lot of phone calls that came in, wiretap phone calls as co-conspirator statements, and so whether the, and I believe, I don't know if your question is whether or not the court made it clear to the jury, you know, what conspiracy that we're talking about, and to some extent, there was a distinction. We did talk about, the name Bustle came up all the time. We certainly talked about there's a Bustle conspiracy, there's this Mize conspiracy, but there was so much evidence of this Bustle conspiracy. Our argument is that the juror could never weed out everything that was presented on this very distinct separate conspiracy. Well, I guess the Court of Appeals here will have to peruse the record pretty carefully to see how often the distinction was made or whether the trial just gave instructions regarding the distinctions between the two conspiracies. Your Honor, the trial judge did give jury instructions, and we haven't raised that here, that the jury instructions were improper. What we raise is that the facts presented at trial effectively amended the indictment, not necessarily the jury instructions. And I would like to point out that part of our argument is that my client and these other defendants were prejudiced by the way that this case was handled because they weren't put on notice before we got to the courthouse that we're going to be dealing with the Bustle conspiracy, much of which was before their alleged conspiracy even got started. As a matter of fact, the father, Jackie Mize, was indicted in the Bustle conspiracy, and they dismissed him out of that conspiracy. They all knew of Mr. Bustle. They knew that that conspiracy had been, or that case was closed out and done with before we ever got to court. Now, the other two defendants did not raise the issue of the Bustle conspiracy as your client did at trial. Not that that affects your argument, but is that true? Well, that's true. I mean, I've read their briefs, and that's not raised. I will say that to probably the most extent, my client was affected by this because of the amount of testimony that was presented that he was involved with Mr. Bustle early on. In fact, his brother, Jamie, there was quite a bit of testimony as regards to him that he was involved neck deep into the Bustle conspiracy before he ever did anything, probably three times as much as he ever did with his father, that he was involved with this Bustle conspiracy. The father, Jackie Mize, there wasn't as much put forth as to his involvement with Mr. Bustle or his prior crimes. But certainly, Kelvin and his brother, Jamie. So that said, I've got six seconds, and we would ask the court to hold that there has been a constructive amendment here that the amendment to the facts that were presented at trial broadened what they could expect just by looking at the indictment. And when that happens, there's a constructive amendment, and it's a per se reversal. As to all? Well, I'm only here on behalf of Mr. Mize, but yes, as to all, or Kelvin Mize. Thank you. Good morning. I'm David Jennings from the U.S. Attorney's Office in Knoxville, having represented the government below. And I think one thing that is important for the court to fully understand is, first of all, the Bustle conspiracy, the Mize conspiracy, we're talking about Claiborne County, Tennessee, which is a rural area near the Tennessee-Kentucky line. It was about in 2008 that law enforcement, specifically DEA, learned about the flood of pills coming out of Florida into East Tennessee. And, in fact, Trent Bustle, Kevin Trent Bustle, was identified as one of the biggest players in East Tennessee in 2008. And that investigation took off, and eventually one of the investigative techniques used was a wiretap of Mr. Bustle's cell phone and home phone. And that wiretap investigation lasted, I would estimate, 45 to 60 days, during which conversations were captured between Trent Bustle and Jackie Mize, his defendant's father. And it was very apparent from those conversations that Mr. Jackie Mize was involved in pill distribution along with Trent Bustle. And, as Mr. Menefee said, eventually... At that point, they weren't co-conspirators. They each had their own operations. Separate, right? We learned that as the investigation went on, yes. Because in one particular conversation, which I referenced in my brief, they're talking about their respective customers and how, well, if I'm out, your customers can come to me and vice versa. Or, if I'm up in Tennessee selling pills and you're down in Florida shopping, your group, you can send your customers to me. So, that's what became clear. But as the court can understand, a wiretap will only tell you so much about the structure of an organization and who the players are. Where you really start to learn it is when you start talking to co-conspirators in the form of cooperating defendant debriefs. And he's correct. Mize was indicted in the 20 defendant indictment along with Bustle and most of the main players in his organization. Thirty or so more were referred for state prosecution. But this was big. And Mize, quite frankly, as we set forth very clearly in our brief, he saw that his sons Kelvin and Jamie were going down with Trent and he saw how Trent Bustle was rolling in from the profits he was making by selling thousands of these pills around Claiborne County, Tennessee. And he, in fact, and we make specific reference in our brief and there's testimony from Amanda Bible, for instance, one of the Bustle co-conspirators who said, Jackie went to Trent and said, will you teach me the business? I want to get into this. And to quote her, said that he wanted to quote, learn the ropes. And in fact, Trent says, come on. And he took Jackie Mize with him on a trip to South Florida and showed him how he did it. And I can't... Could you have indicted this case, given the nexus that you are demonstrating that you are supportive of the fact. Could you have indicted this as one conspiracy? Just the Bustle conspiracy? Because that seemed to be the overarching conspiracy. Judge Marbley, probably so. But it became clear as we got into more and more, and especially when we got to debrief Trent Bustle, who came in late because we had indicted a bunch of his family members and he was trying to hold out to save them. But when he finally came in, he made it very clear. He had his own thing going. He copied... He was a copycat. I showed him the motels I would put my people up in, and then I demonstrated, man, I can rent houses down here for a lot less money than hotels. And that's exactly what Jackie Mize eventually did. He rented his own house after spending money for multiple hotel rooms at a time. But look closely to the members of the conspiracy, the Mize conspiracy. This group included Kelvin and his wife Donna Webb. Donna Webb is very key here. Jamie, the other defendant. Jackie's two other sons, Jonathan and Ryan, as well as Jonathan's girlfriend and then Jackie's daughter, Leanne Baker, and her husband, Tony. Vandale Sizemore, James Maiden, and Brandon Williams. Approximately ten people set forth at page five and six of my brief. That was his core group of shoppers once he had learned the business and started doing his own thing. Now, the court, and I've set forth very clearly, at page 32 and 3 of the brief, the very distinct evidence presented to this jury about how Jackie Mize ran his group and who those players were. And one of the things that are the most, some of the most compelling evidence against this appellant's case was his own handwriting. We seized drug records out of the Mize farmhouse, is the way they referred to it, where Kelvin Mize had kept detailed records of his and Donna, his wife Donna's trips with Jackie. Yes, Your Honor. I guess what it all hunts back to, though, Mr. Jennings, is that you haven't refuted Mr. Menefee's position that most of the evidence presented at trial involved the Bustle conspiracy, and it almost seems like the Mize conspiracy, if you look at the record, was an afterthought. And the law is clear that when you have this type of amendment, that mandates a reversal. But, Your Honor, I take issue with the notion that most of the evidence was about the Bustle conspiracy. It wasn't. I've summarized the Bustle conspiracy in about a page and a half of my brief and spent 12 pages describing the evidence presented by the government against the Mize defendants. And we spent a good bit of time showing very clearly we used maps, we used credit card records to show the jury how Jackie Mize was taking his people in caravans down I-75 to the Tampa-St. Pete area and stopping every few hundred miles and filling up several cars at a time with gas. Once he got down there, several hotel rooms at a time, just like Bustle had done back in the day. And then he saw, again, you can save money by renting a house. That's exactly what Jackie Mize did. He rented a house for his own people. Don't ignore the testimony of Donna Webb. She laid out very clearly, this defendant's wife, ex-wife now, who testified, I was with him on at least 30 trips. The deal was Jackie Mize financed everything. When we got down there, he would provide all of the financing for the doctors to be paid, for the pharmacies to be paid for the pills. And when we come out, we've got to give half our pills to Jackie and then we can do whatever we want with the rest, just like Bustle had taught him. And we spent a lot of time and put on a lot of very detailed evidence about the financial end of this conspiracy that had nothing to do with the Bustles, nothing whatsoever. And we painted a very clear picture for the court and the jury that this was a copycat organization that picked up and decided to go for the gold, just like Bustle did. And that's what Jackie Mize's motive was. And he tried to tell the jury that he was a pill addict and he needed these pills, and the jury clearly didn't believe a word he said. He even denied being dad in his own son's drug records, which was laughable, just laughable. So the bottom line is these two became like two convenience stores at the same intersection. They were competitors. It was kind of like if you go to this convenience store and they're out of milk, go across the street to the other one and get a gallon of milk. That's how they operated. Two separate conspiracies operating in a similar fashion in the same location. Unless there are further questions. Thank you. Thank you. Just briefly, a review of this record, a review of the transcripts in this record, clearly show that the Bustle conspiracy was not a footnote to this case. The government used this conspiracy to prove the Mize conspiracy. When they say it's a copycat organization, it's our contention that they spent way too much time on the evidence of the original than they did the copy. When they talk about how key Donna Webb was to this case, Donna Webb was involved in this case. Before she testified about anything, she testified that she was a doctor shopper for Kevin Trent Bustle. Her and her husband went on doctor shopping trips with Kevin Trent Bustle. She was asked, who paid for these visits? Kevin Trent Bustle. Who paid for the MRIs? Kevin Trent Bustle. This is on page 883 of the transcript. Who paid for the scripts? Kevin Trent Bustle. She describes in detail the facts and her and her husband, my client, going and working for Kevin Trent Bustle, a long time before the alleged conspiracy in this indictment. Then she goes on, to be fair. She does go on to say that he also worked for Jackie Mize. But the first part of that, the first large part of that, is improper. If there's no questions. Apparently not. Thank you so much. And the case is submitted. There being no further cases for oral argument.